**Case No. 13-17458**
𝔍𝔫 𝔱𝔥𝔢 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰 𝔣𝔬𝔯 𝔱𝔥𝔢 𝔑𝔦𝔫𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

WELLS FARGO BANK, NA,

        Plaintiff – Appellee

vs.

SFR INVESTMENTS POOL 1, LLC,

        Defendant – Appellant.

**APPEAL**
from the United States District Court for Nevada, Las Vegas
The Honorable JAMES C. MAHAN, United States District Judge
United States District Court Case No. 2:13-cv-01375-JCM-PAL

---

**APPELLANT'S REPLY BRIEF**

---

HOWARD C. KIM, ESQ.
Nevada Bar No. 10386
E-mail: howard@hkimlaw.com

JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
E-mail: jackie@hkimlaw.com

DIANA S. CLINE, ESQ.
Nevada Bar No. 10580
E-mail: diana@hkimlaw.com

JESSE N. PANOFF, ESQ.
Nevada Bar No. 10951
E-mail: jesse@hkimlaw.com

HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Dr., Suite 110
Henderson, Nevada 89014
Telephone: (702) 485-3300
Facsimile: (702) 485-3301
*Attorneys for Appellant*
*SFR Investments Pool 1, LLC*

i

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

I.  ARGUMENT ...............................................................................................1

    A.    Lien Priority & 116.3116(2)'s Structure are Undisputed .....................1

    B.    116.3116(2) Perpetuates  Rather than Derogates the Common Law ..................................................................................2

    C.    Bank's "Treacherous" use of Statutory Silence ....................................4

    D.    An Aggrandized View of "Equity" is Inconsistent with 116 ..............................................................................................6

        1.    *Bank does not Supplement a "Provision" of 116* .......................6

        2.    *No Equitable "Principle" is Identified* .......................................7

        3.    *Equitable Tenets Defeat Bank's 116.1108 Contentions* ....................................................................7

    E.    Bank Underestimates the Value of Persuasive Interpretive Authorities .........................................................................9

        1.    *1978 Law Review Article & Carl Lisman's Letter* ...................10

        2.    *NRED's Advisory Opinion & the Administrator's Testimony* ....................................................................11

        3.    *So-called "Commentary" & the Joint Editorial Board's Report* ....................................................................12

    F.    Bank Misunderstands this Court's Injunction Precedent ....................13

        1.    *SFR can discuss the Remaining Winter Factors* ......................13

        2.    *This Court has Discretion to Reverse & Remand the Instant Appeal* ....................................................................14

*3.*     *How this Appeal's Narrow Issue Impacts Discretion* ................................................................... 14

*4.*     *Bank Misapplies Winter's Remaining Elements* ....................... 15

II.   CONCLUSION ................................................................................ 18

## TABLE OF AUTHORITIES

**CASES**

*7912 Limbwood Ct. Trust. v. Wells Fargo Bank, N.A.*,
___ F.Supp.2d ___, No. 2:13-cv-506-PMP-GWF, 2013 WL
5780793 (D. Nev 2013) ......................................................................3, 5

*Affordable Hous. Dev. Corp. v. Fresno*,
433 F.3d 1182 (9th Cir. 2006) .......................................................13

*Alberding v. Brunzell*,
601 F.2d 474 (9th Cir. 1979) .........................................................7

*BankAm. Corp. v. United States*,
462 U.S. 122 (1983)........................................................................9

*Cape Jasmine Ct. Trust v. Cent. Mortg. Co.*,
No. 2:13-cv-1125-APG-CWH, 2014
WL 1305015 (D. Nev. 2014) ............................................... 5, 8, 9

*Carter v. Derwinski*,
987 F.2d 611 (9th Cir. 1993) ...........................................................4

*Citibank Nevada, N.A. v. Wood*,
753 P.2d 341 (Nev. 1988)................................................................5

*Clem v. Lomeli*,
566 F.3d 1177 (9th Cir. 2009) .......................................................1

*DirecTV, Inc. v. Webb*,
545 F.3d 837 (9th Cir. 2008) .........................................................4

*Dixon v. Thatcher*,
742 P.2d 1029 (Nev. 1987)............................................................16

*Evans v. Shoshone-Bannock Land Use Policy Comm'n*,
736 F.3d 1298 (9th Cir. 2013) ......................................................15

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*,
654 F.3d 989 (9th Cir. 2011) ............................................... 14, 16

*Girouard v. U.S.*,
    328 U.S. 61 (1946)..........................................................................4

*Holtzman v. Bennett*,
    222 P. 1095 (Nev. 1924)................................................................2

*Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*,
    179 P.3d 556 (Nev. 2008)...............................................................2

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) .....................................................11

*Jones v. Ryan*,
    733 F.3d 825 (9th Cir. 2013) ..........................................................9

*Mello v. Woodhouse*,
    872 P.2d 337 (Nev. 1994)................................................................9

*Nolm, LLC v. Clark Cnty.*,
    100 P.3d 658 (Nev. 2004)................................................................8

*Pace v. DiGuglielmo*,
    544 U.S. 408 (2005)........................................................................7

*Peabody Coal Co. v. Navajo Nation*,
    75 F.3d 457 (9th Cir. 1996) ..........................................................10

*Pedroza v. BRB*,
    624 F.3d 926 (9th Cir. 2010) ..........................................................4

*Premier One Holdings, Inc. v. BAC Home Loans Servicing LP*,
    No. 2:13-cv-895-JCM-GWF, 2013 WL 4048573
    (D. Nev. 2013) ................................................................................7

*Putnam Family P'ship v. Yucaipa*,
    673 F.3d 920 (9th Cir. 2012) ..........................................................4

*Rivero v. Rivero*,
    216 P.3d 213 (Nev. 2009)................................................................4

v

*Rodriguez v. Airborne Express*,
  265 F.3d 890 (9th Cir. 2001) ........................................................8

*Sammartano v. First Jud. Dist. Ct.*,
  303 F.3d 959 (9th Cir. 2002) ......................................................15

*U.S. v. Castillo-Marin*,
  684 F.3d 914 (9th Cir. 2012) ........................................................1

*Union Oil Co. v. Terrible Herbst, Inc.*,
  331 F.3d 735 (9th Cir. 2003) ......................................................10

*Wells Fargo & Co. v. ABD Ins. & Fin. Services, Inc.*,
  No. 13-15625, 2014 WL 806385 (9th Cir. Mar. 11, 2014) ..........................15

*Westerman v. U.S.*,
  718 F.3d 743 (8th Cir. 2013) ........................................................7

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008) ............................................................... passim

## STATUTES

Nev. Rev. Stat. § 107 ..................................................................5

Nev. Rev. Stat. § 116 ........................................................... 5, 6, 9, 17

Nev. Rev. Stat. § 116.1108 ..................................................... passim

Nev. Rev. Stat. § 116.1114 ...........................................................2

Nev. Rev. Stat. § 116.3116 .........................................................1, 3

Nev. Rev. Stat. § 116.3116(2) ................................................. passim

Nev. Rev. Stat. § 116.31162 ..........................................................5

Nev. Rev. Stat. § 116.31168 ..........................................................5

Nev. Rev. Stat. § 357.250 ............................................................2

vi

**OTHER AUTHORITIES**

13-01 Adv. Op. State, Real Estate Div., *The Super Priority Lien*
(Dec. 12, 2012) ..............................................................................11

BLACK'S LAW DICTIONARY (8th ed. 1999) ...............................................6

Carl Lisman, Super Priority,
(Letter May 2013) ..........................................................................11

Henry L. Judy & Robert A. Wittie, *Uniform Condominium Act:*
*Selected Key Issues*, 13 REAL PROP. PROB. & TR. J. 437 (1978) ........... 10, 11

The Six-Month "*Limited Priority Lien*" for Association Fees under
the Uniform Common Interest Ownership Act, Rpt., Jt. Ed. Bd.
For Uniform Real Prop. Act (June 1, 2013) ..................................................12

Uniform Common-Interest Ownership Act ..................................................... 11, 12

## INTRODUCTION

Bank concedes priority, distorts 116.1108, trivializes persuasive authorities, and misunderstands this Court's injunction precedent. This Court should reverse and remand with instructions for the district court to either enjoin Bank's foreclosure or to consider the remaining *Winter*[1] factors consistent with a corresponding opinion.

## I.
## ARGUMENT

### A. Lien Priority & 116.3116(2)'s Structure are Undisputed

If arguments in an opening brief are not contested, then they are conceded. *U.S. v. Castillo-Marin*, 684 F.3d 914, 922 (9th Cir. 2012)("The government, again, did not contest this argument and, thus, apparently concedes it."); *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009)(argument not addressed in answering brief waived). Here, Bank did not contest SFR's description of 116.3116(2)'s structure or 116.3116(2)(b)'s status as a qualified exception, thereby conceding these points. Similarly, Bank failed to dispute that under 116.3116(2), Association's lien was "prior to" Bank's deed of trust. Hence, it is undisputed that Association's lien has priority over Bank's deed of trust. This directly contradicts the seven orders the district court used to deny SFR injunctive relief, which perhaps explains why Bank

---

[1] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

1

cited only two of these orders. *Compare* (AOB_12-22)(reviewing the seven orders), *with* (AAB_14-17)(citing only two of the seven orders). Either way, Bank's acknowledgement about priority caused it to invoke an inapplicable canon of construction to fend off extinguishment.

### B. 116.3116(2) Perpetuates Rather than Derogates the Common Law

Bank attacks extinguishment with the canon "statutes in derogation of the common law are strictly construed." (AAB_5-6.) The position is as follows: Because 116.3116(2) establishes Association's lien was "prior to" Bank's deed of trust, this law is in derogation of the "first in time" common law rule (i.e. date of recordation dictates priority). Yet, this canon is inapplicable for several reasons. To begin with, Nevada lien laws are *liberally* construed; so too are remedial statutes. *Int'l Game Tech., Inc. v. Second Jud. Dist. Ct.*, 179 P.3d 556, 560-61 (Nev. 2008)("Finally, remedial statutes, like NRS § 357.250, should be liberally construed to effectuate the intended benefit."); *Holtzman v. Bennett*, 222 P. 1095, 1096 (Nev. 1924)("Lien statutes are liberally construed in this jurisdiction with a view of effectuating their object and purpose."). Here, 116.3116(2) is a lien law, necessitating a *liberal* interpretation. *Id.* And, as Bank admits, 116.3116(2) is a remedial statute, deserving a *liberal* reading. (AAB_7, 16-20.) In fact, 116.1114 mandates "remedies provided by this chapter must be liberally administered[.]"

2

Not only is the aforementioned canon about statutes in derogation of the common law inapplicable, but it is also irrelevant because Bank's deed of trust was not "first in time." This is so because Association had a lien "from the time the . . . assessment . . . becomes due." 116.3116(1). And, recording the declaration "constitutes record notice and perfection of the lien." 116.3116(5). Here, Association recorded its declaration on March 15, 2002. (2EOR_032.) Contrastingly, Bank's deed of trust was recorded December 9, 2005. (2EOR_035.) Therefore, Association's lien was "first in time" because the declaration was recorded nearly three years before the deed of trust's recordation. 116.3116(1); 116.3116(5). Commensurate with 116.1108, and property law's principle that foreclosure of a "prior" lien extinguishes junior interests, Association's foreclosure extinguished Bank's deed of trust. *7912 Limbwood Ct. Trust. v. Wells Fargo Bank, N.A.*, ___ F.Supp.2d ___, No. 2:13-cv-506-PMP-GWF, 2013 WL 5780793, at *7 (D. Nev. Oct. 28, 2013). This outcome perpetuates instead of derogates the "first in time" rule. In some respects, however, construing 116.3116(2) "strictly" or "liberally" is immaterial. What matters most is gleaning meaning from a statute's language. Regrettably, Bank eschews text for silence, doing so to avoid extinguishment. (AAB_3-5.)

**C. Bank's "Treacherous" use of Statutory Silence**

Statutory silence "is at best treacherous[.]" *Girouard v. U.S.*, 328 U.S. 61, 69 (1946). It is a "tenuous" and unreliable basis upon which to determine a law's meaning. *Putnam Family P'ship v. Yucaipa*, 673 F.3d 920, 930 n.8 (9th Cir. 2012)("[l]egislative silence is generally a tenuous basis for statutory construction."); *Pedroza v. BRB*, 624 F.3d 926, 933 (9th Cir. 2010)(congressional inaction unreliable guide to legislative intent). Here, Bank asserts 116.3116(2)'s "lack of statutory language" regarding extinguishment means Association's foreclosure did not extinguish Bank's deed of trust. (AAB_5.) As the above authorities demonstrate, this contention is "treacherous," unreliable, and "tenuous." It also overlooks the judiciary's traditional ability to supplement textual gaps, something the opening brief discussed but Bank ignored. *Compare* (AOB_11)(citing *Carter v. Derwinski*, 987 F.2d 611, 615 (9th Cir. 1993)), *with* (AAB_3-5)(recounting textual gap without recognizing judicial supplementation). Both Nevada's Supreme Court and this Court supplement legislative gaps. *See, e.g., DirecTV, Inc. v. Webb*, 545 F.3d 837, 847 (9th Cir. 2008)(using state law to fill gaps regarding statutes of limitations); *Rivero v. Rivero*, 216 P.3d 213, 225 (Nev. 2009)(filling statutory gaps in child custody law). Indeed, supplementation is even anticipated and authorized by 116.1108's guarantee that property law

4

principles supplement 116 "[e]xcept to the extent inconsistent with this chapter."
One principle is: foreclosure of a "prior" lien extinguishes junior interests.
*Limbwood*, 2013 WL 5780793, at *7; *see also Citibank Nevada, N.A. v. Wood*, 753
P.2d 341, 341-42 (Nev. 1988).

Notably, this principle is not "inconsistent" with 116 because it has been
historically used to supplement textual gaps in laws concerning priority and non-
judicial foreclosure.[2] *Cape Jasmine Ct. Trust v. Cent. Mortg. Co.*, No. 2:13-cv-
1125-APG-CWH, 2014 WL 1305015, at *5 (D. Nev. Mar. 31, 2014). For example,
when banks foreclose a first deed of trust they do so through Nev. Rev. Stat.
Chapter 107, which is silent about extinguishment. Despite this gap, banks
maintain that non-judicial foreclosure of a first deed of trust extinguishes junior
interests, utilizing the same property law principle at issue here. Respectfully,
Bank's suggestion that 116.3116(2)'s textual gap precludes extinguishment is
disingenuous in light of Chapter 107's identical gap. At bottom, 116.1108

---

[2] Additionally, the principle is consistent with 116 because it explains what
happens when an association non-judicially forecloses its "prior" lien. Again,
116.3116(2) establishes when an association's "lien is prior to all security interest
described in paragraph (b)[.]" After fixing priority, 116.31162 – 116.31168
authorize associations to enforce their liens through non-judicial foreclosure. Thus,
the property law principle coincides with and completes 116's treatment of priority
and foreclosure. This functional role makes the principle consistent with 116.

5

contemplates and allows judicial supplementation, a proposition Bank embraces in its attempt to use an unwieldy version of "equity" to prevent extinguishment.

### D. An Aggrandized View of "Equity" is Inconsistent with 116

Under 116.1108, "[t]he principles of . . . equity . . . supplement the provisions of this chapter, except to the extent inconsistent with this chapter." According to Bank, 116.1108 allows it to use an expansive version of "equity" to defeat extinguishment. (AAB_14-17.) This is wrong because Bank: (i) is not supplementing a "provision" of 116; (ii) fails to identify an equitable "principle;" and (iii) offers a position that is "inconsistent" with 116.3116(2). As a result, 116.1108 does not permit Bank to override extinguishment with "equity."

#### 1. *Bank does not Supplement a "Provision" of 116*

116.1108 allows equitable principles to supplement "the **provisions** of [116.]" A "provision" is "a clause in a statute[.]" BLACK'S LAW DICTIONARY 1262 (8th ed. 1999). Thus, equitable principles can supplement "a clause in [116.]" Here, Bank is not using "equity" to supplement "a clause in [116.]" Rather, Bank is trying to use "equity" to prevent the extinguishment of its deed of trust, a subject Bank repeatedly emphasizes is not in any "provision" of 116. (AAB_1, 3-5.) Therefore, Bank's "equity" arguments and reliance on 116.1108 are inapposite because Bank does not use "equity" to supplement a "**provision** of [116.]"

6

### 2.  *No Equitable "Principle" is Identified*

Moreover, Bank does not identify an equitable "**principle**." Instead, it defines "equity" as little more than a judge's predilections about what 116.3116(2) ought to be. (AAB_14-17.) This is not "equity." *Alberding v. Brunzell*, 601 F.2d 474, 476 (9th Cir. 1979)("[e]quity is more than just a 'feeling on how something ought to be[.]'"); *see also Westerman v. U.S.*, 718 F.3d 743, 752 (8th Cir. 2013)("Equity does not . . . give courts power to make policy decisions deemed 'fair' in the eyes of Article III judges.").[3] Bank's inability to "[p]oint to an established equitable principle[]" *Westerman*, 718 F.3d at 752, prevents it from being able to trigger 116.1108. At the same time, several traditional precepts negate Bank's "equity" ruminations.

### 3.  *Equitable Tenets Defeat Bank's 116.1108 Contentions*

Three principles overcome Bank's "equity" arguments. First, if a litigant is dilatory, then she cannot invoke equitable principles or maxims. *Pace v. DiGuglielmo*, 544 U.S. 408, 419 (2005)("Under long-established principles,

---

[3] Bank's expansive definition of "equity" does, however, explain why it repeatedly cites *Premier One Holdings, Inc. v. BAC Home Loans Servicing LP*, No. 2:13-cv-895-JCM-GWF, 2013 WL 4048573 (D. Nev. Aug. 9, 2013). In *Premier One*, the judge's statutory interpretation was, in part, based on the judge's belief that neither banks nor associations were sympathetic litigants. *Id.*, at *4 n.1. This loaded characterization should play no role in assessing a statute's meaning. Incidentally, *Premier One* was penned by the judge who wrote this appeal's underlying order.

7

petitioner's lack of diligence precludes equity's operation."); *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 n.12 (9th Cir. 2001)("Diligence is required for the successful invocation of virtually any equitable doctrine."). Here, Bank's dilatoriness is reviewed in the opening brief and some of this Court's orders, which dealt with the answering brief's tardiness. (AOB_4-6); App. Dkt. No. 29 (Mar. 24, 2014 Order granting Bank's motion to file answering brief late); App. Dkt. No. 23 (Mar. 4, 2014 Order to file answering brief). Hence, Bank's dilatoriness eliminates equitable relief.

Second, if one seeks equity, then one must do equity. *Nolm, LLC v. Clark Cnty.*, 100 P.3d 658, 663 (Nev. 2004). Here, Bank acknowledges 116.3116(2) tries to ensure that association assessments are paid. (AAB_7, 20.) It then observes banks would prefer paying assessments to having a borrower lose "ownership." (AAB_9.) Though conceding these points, Bank denies any responsibility to pay assessments. (AAB_20.) This is inequitable because it enervates the objective Bank attributes to 116.3116(2). Likewise, by paying assessments, Bank could have avoided the supposedly "inequitable" result of extinguishment. *Cape Jasmine*, 2014 WL 1305015, at *6. Consequently, Bank cannot seek equity because it has not done equity.

8

Third, equity follows the law. *Mello v. Woodhouse*, 872 P.2d 337, 341 (Nev. 1994); *see Jones v. Ryan*, 733 F.3d 825, 844 (9th Cir. 2013)("Equity may inform our interpretation of statutory language, but it cannot supplant specific statutory standards or rewrite the statutory text."). This means if a statute's text is clear, then equity cannot defeat such language. *BankAm. Corp. v. U.S.*, 462 U.S. 122, 140 (1983)("[w]e are not to rewrite the statute based on our notions of appropriate policy."). Here, 116.3116(2)'s words clearly establish priority, stressing when an association's "lien is prior to all security interests described in paragraph (b)[.]" Yet, Bank calls these words "absurd and draconian" because Association's lien was for less money than Bank's deed of trust. (AAB_16.) Competing lien-values, however, have nothing to do with priority, an issue resolved by 116.3116(2)'s structure and text. *Cape Jasmine*, 2014 WL 1305015, at *6. To conclude otherwise would be to defy the tenet that equity follows the law. It would also be an interpolation that supplants, rather than "supplements," Chapter 116. Bank's attempt to invoke 116.1108 fails as does its efforts to depict "absurd results" and to trivialize SFR's persuasive authorities.

### E. Bank Underestimates the Value of Persuasive Interpretive Authorities

Bank's insights about "absurd results" and persuasive authorities are inconsequential because Bank does not contend 116.3116(2) is ambiguous.

9

(AAB_6-17.) *Peabody Coal Co. v. Navajo Nation*, 75 F.3d 457, 468 (9th Cir. 1996). SFR's opening brief explained if a statute is unambiguous, then the "absurd result" doctrine is inapplicable, a tenet Bank does not dispute. (AOB_18.) Consequently, Bank's unsubstantiated fears about absurd results are irrelevant because 116.3116(2) is unambiguous. Nevertheless, Nevada's highest court has yet to construe 116.3116(2). As such, the district court had to predict how Nevada's Supreme Court would read that statute. *Union Oil Co. v. Terrible Herbst, Inc.*, 331 F.3d 735, 739 (9th Cir. 2003). In addition to 116.3116(2)'s structure and text, Nevada's highest court might consult persuasive authorities SFR referenced in the opening brief. (AOB_22-23.) Unfortunately, Bank trivializes these authorities. (AAB_6-13.)

### 1. *1978 Law Review Article & Carl Lisman's Letter*

To begin with, Bank entirely ignores a 1978 law review article written by Freddie Mac's former General Counsel. *Compare* (AOB_19-20)(discussing Henry L. Judy & Robert A. Wittie, *Uniform Condominium Act: Selected Key Issues*, 13 REAL PROP. PROB. & TR. J. 437, 494 (1978)("*Selected Key Issues*")), *with* (AAB_6-13)(disregarding article in discussion of SFR's persuasive authorities). This is unsurprising because the article predicted banks will pay delinquent assessments to prevent foreclosure, which would "have the effect of wiping out their liens."

10

*Selected Key Issues*, at 494. Next, Bank asks this Court to reject Carl Lisman's opinion letter because it is purportedly hearsay. (AAB_12.) Assuming *arguendo* that Mr. Lisman's letter is hearsay, district courts may "consider hearsay in deciding whether to issue a preliminary injunction." *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Bank's flawed "hearsay" argument is merely a desperate attempt to evade Mr. Lisman's letter. After all, Mr. Lisman, one of the Uniform Common-Interest Ownership Act's ("UCIOA") drafters, wrote "foreclosure by the association extinguishes the first security interest and all junior interests." (3EOR_493.)

### 2. *NRED's Advisory Opinion & the Administrator's Testimony*

Similarly, Bank's statements about NRED's[4] advisory opinion and NRED's Administrator's testimony are equally misguided. (AAB_6-12.) As for the advisory opinion, Bank drones on about the contents of an association's lien, a fact-intensive topic detached from this appeal's narrow legal issue: whether under 116.3116(2)'s structure and text, Association's foreclosure extinguished Bank's deed of trust. The advisory opinion, as Bank accedes, determined association foreclosures extinguish deeds of trust. (AAB_7.) Turning to the Administrator's testimony, Bank tries its hand at obfuscation by raising a host of considerations

---

[4] Nevada Real Estate Division of the Department of Business and Industry ("NRED").

11

that are irrelevant to this appeal's resolution in general and to 116.3116(2)'s structure and text in particular.[5] (AAB, 7-9.) The Administrator's remarks about "uncertainty" and that the "state of the current law" will be resolved by courts echo the opening brief, which noted the instant appeal raises an issue of first impression in Nevada that is the current subject of a lower court split. *Compare* (AOB_1-2)(discussing split and noting issue is one of first impression), *with* (AAB_10-12)(quoting Administrator's testimony). Until this Court or Nevada's Supreme Court construes 116.3116(2), a degree of "uncertainty" will pervade. These realities do not, however, detract from the Administrator's conclusion that an association's foreclosure "would extinguish the first secured[.]" (AAB_10.)

### 3. <u>So-called "Commentary" & the Joint Editorial Board's Report</u>

Finally, Bank's remaining jabs at so-called "Commentary to the UCOIA" and the Joint Editorial Board for Uniform Real Property Acts' Report are inexplicable. (AAB_9.) Consider the opening brief did not mention, let alone evaluate, "Commentary to the UCOIA." To the extent Bank is discussing the comments to the *UCIOA*, its analysis suffers from the same flaw as its approach to 116.3116(2)'s text: unduly relying on silence. (AAB_9.) Meanwhile, Mr. Lisman,

---

[5] On May 7, 2014, Nevada's Supreme Court will conduct oral arguments for two cases (Nos. 62528 and 63078) that involve some of the irrelevant considerations Bank discusses.

12

a UCIOA drafter, confirmed that association foreclosures extinguish deeds of trust. (3EOR_519.) Regarding the Report, Bank's lone objection is that the Report is not final, hardly a sufficient reason to discount the Report's critique of two decisions the district court relied on in denying SFR injunctive relief. (3EOR_531-32 n.9.) Ultimately, Bank underestimates the value of SFR's persuasive authorities. Its positions about this Court's preliminary injunction precedent are just as meritless.

### F.  Bank Misunderstands this Court's Injunction Precedent

#### 1.  *SFR can discuss the Remaining Winter Factors*

Bank is confused about this Court's preliminary injunction jurisprudence and is mistaken about the type of relief this Court can give SFR. (AAB_17-20.) For starters, Bank declares SFR is prohibited from discussing three of the four preliminary injunction elements because it did not do so in its opening brief. (AAB_20.) This is fallacious. If an answering brief raises an issue omitted from an opening brief, then this Court has discretion to review that issue. *Affordable Hous. Dev. Corp. v. Fresno*, 433 F.3d 1182, 1193 (9th Cir. 2006). Here, Bank's answering brief touched upon irreparable harm, balance of hardships, and public interests. (AAB_17-20.) Thus, this Court has discretion to review these issues. Besides, Bank does not allege it will be prejudiced or harmed by SFR analyzing the three remaining injunction considerations; no such allegation could have been

13

made because both parties have already debated these factors before this Court in evaluating SFR's emergency motion for an injunction pending appeal, which this Court granted. App. Dkt. No. 5-1 (Bank's opposition to SFR's motion for injunction pending appeal); App. Dkt. No. 2, 8 (SFR's emergency motion for injunction pending appeal and reply in support).

### 2. *This Court has Discretion to Reverse & Remand the Instant Appeal*

Furthermore, and as Bank recognizes, the district court did not consider *Winter*'s three remaining factors. (AAB_18.) Relief was denied simply because the court determined SFR lacked a reasonable probability of success on the merits. In doing so, the court did not fully develop a factual record pertaining to irreparable harm, balance of hardships, or public interests. Because an injunction's propriety is fact-intensive, this Court has discretion to "remand to allow the district court to make the requisite factual determinations regarding [the remaining *Winter* factors]." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 1000 (9th Cir. 2011).

### 3. *How this Appeal's Narrow Issue Impacts Discretion*

Likewise, this appeal's scope and issue are narrow: whether the district court erred in concluding SFR was unlikely to succeed on the merits of its counterclaims, a determination predicated on the court's deficient construction of

116.3116(2)'s structure and text. SFR contends the court abused its discretion because its decision was based on an erroneous view of law, thereby tainting its analysis of *Winter*'s first element. If a district court errs in its view of the applicable law "and therefore abused its discretion in its analysis of the first element," then this Court can "reverse the district court's order and remand for reconsideration and further proceedings." *Wells Fargo & Co. v. ABD Ins. & Fin. Services, Inc.*, No. 13-15625, 2014 WL 806385, at *1 (9th Cir. Mar. 11, 2014). In sum, this Court can: (i) reverse and remand with instructions to enjoin Bank's foreclosure[6] or (ii) reverse and remand with instructions for the district court to conduct the remaining *Winter* factors consistent with a corresponding opinion.

### 4. *Bank Misapplies Winter's Remaining Elements*

Regardless, Bank's positions about irreparable harm, balance of hardships, and the public interest are unpersuasive because they diminish SFR's "harm," fuse "hardship" exclusively with potential monetary loss, and offer a convoluted conception of "pubic interests." Indeed, Bank opines SFR can be compensated

---

[6] If this Court concludes SFR has a "100% probability of success on the merits," then this "alone entitles it to reversal of a district court's denial of a preliminary injunction, without regard to the balance of the hardships." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 965 (9th Cir. 2002). *But see Evans v. Shoshone-Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1307 (9th Cir. 2013)(noting that despite overwhelming likelihood of success on merits, injunction is extraordinary remedy not awarded as of right).

with money damages, making its harm "reparable." (AAB_19.) This is incorrect because absent an injunction, SFR will lose unique property, thereby suffering irreparable harm. *Dixon v. Thatcher*, 742 P.2d 1029, 1030 (Nev. 1987). Neither purchase price nor SFR's decision to rent its house changes any of this under Nevada law; property is unique and its loss is irreparable.

Next, Bank states the balance of hardships tips in its favor because its deed of trust encompasses more money than Association's lien. (AAB_19.) Yet, potential monetary loss is not dispositive. To the contrary, courts balance the competing claims of injury and assess how granting or denying injunctive relief will impact each litigant. *Flexible Lifeline Sys., Inc.*, 654 F.3d at 997 (quoting *Winter*, 555 U.S. at 24). In this case, an injunction will prevent Bank from selling its collateral (i.e. SFR's house) for a period of time. Contrastingly, without an injunction Bank will sell the house, causing SFR to lose its unique property. A temporary limitation on the transferability of collateral is less of a hardship than outright property loss. In short, the balance of hardships favors SFR, especially in light of Bank's dilatoriness and failure to protect its collateral by paying the assessments.

Lastly, Bank's analysis of "public interests" primarily hinges on the monetary differences between the deed of trust and Association's lien. (AAB_19-

16

20.) This overlooks several public interests, such as: promoting the finality of purchases made at association foreclosures; effectuating 116's non-judicial foreclosure provisions; facilitating associations' ability to receive assessments regularly; and actualizing a duly enacted statutory scheme designed to benefit and protect owners of homes in Nevada common-interest communities. All told, the remaining *Winter* factors demonstrate an injunction's propriety. Nonetheless, and if this Court determines the district court erred in its analysis of *Winter*'s first element, then it has the discretion to reverse and remand with instructions for the district court to assess the remaining *Winter* factors consistent with a corresponding opinion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II.

## CONCLUSION

SFR respectfully requests this Court to reverse and remand with instructions for the district court to either enjoin Bank's foreclosure or to consider the remaining *Winter* factors consistent with a corresponding opinion.

Dated: April 7, 2014

Respectfully submitted:

_/s/Jacqueline A. Gilbert_
HOWARD C. KIM, ESQ.
Nevada Bar No. 10386
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
DIANA S. CLINE, ESQ.
Nevada Bar No. 10580
JESSE N. PANOFF, ESQ.
Nevada Bar No. 10951
HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
(702) 485-3300
*Counsel for Defendant-Appellant*

18

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies the attached opening brief is proportionally spaced, using a 14 point typeface and – excluding the exempted portions as provided in Fed. R. App. P. 32(a)(7)(B)(iii) – contains 3,679 words. Pursuant to Fed. R. App. P. 32(a)(7)(C)(i), the undersigned has relied upon the word count of the word-processing system used to prepare the attached brief.

Dated: April 7 2014                              Respectfully submitted:


   */s/Jacqueline A. Gilbert*
HOWARD C. KIM, ESQ.
Nevada Bar No. 10386
JACQUELINE A. GILBERT, ESQ.
Nevada Bar No. 10593
DIANA S. CLINE, ESQ.
Nevada Bar No. 10580
JESSE N. PANOFF, ESQ.
Nevada Bar No. 10951
HOWARD KIM & ASSOCIATES
1055 Whitney Ranch Drive, Suite 110
Henderson, Nevada 89014
(702) 485-3300
*Counsel for Defendant-Appellant*

19